Thomas P. Brown & others *vs.* Robert Vinal & others.

A. covenanted to pay B. $ 1250 for carrying, during 13 months, all the mails between Boston and Providence ; B. to leave Boston, with the Providence way mail, at 5 o'clock, A. M : Provided, that if the time for leaving with said way mail should be changed to 8 o'clock, then A. should pay $ 1000, and no more, for carrying all said mails : Said sum of $ 1000, or $ 1250, whichever might become due, to be paid in equal quarterly payments. The post office department permitted B. during 14 days of the 13 months, to leave Boston, with the said way mail, at 8 o'clock, A. M.; and at the end of 14 days, that permission was revoked. *Held,* that by the true construction of the covenant, B. was entitled to recover of A. at the rate of $ 1250 for 13 months, during the time he left Boston at 5 o'clock, and at the rate of $ 1000 for 13 months, during the time he left Boston, under said permission, at 8 o'clock.

This was an action of covenant broken, and was submitted to the court on an agreed statement of facts, which sufficiently appear in the opinion of the court.

*B. Rand,* for the plaintiffs.

*G. T. Bigelow,* for the defendants.

Hubbard, J. In this action to recover damages for the breach of a covenant, the following facts were agreed on between the parties : The defendants were sub-contractors, under Stockton & Stokes of Baltimore, for carrying all the United States mails between Boston and Providence ; and for the purpose of fulfilling their contract, they entered into a sealed agreement with the plaintiffs, bearing date October 30th 1835, to carry the mails mentioned in their contract with Stockton & Stokes ; and, among other things, to leave Boston, with the Providence way mail, at 5 o'clock A. M., and deliver the same in Providence at 12 o'clock, M., from the date of said agreement to the 1st of January 1837 ; for which, and for carrying the other mails as agreed by the plaintiffs, the defendants covenanted to pay them the sum of $ 1250 ; with this proviso, however — "if the time of the delivery of the way mail at Providence shall be changed to 3 o'clock, then in that case the said Vinal" & others "are to pay the said Brown" & others "the sum of $ 1000, and no more."

The plaintiffs carried the mail, from and after the said 30th of October, agreeably to their contract, and fully performed the

other stipulations entered into by them with the defendants, in every respect.

During the existence of the contract, permission was given to the plaintiffs, by the post office department, to leave Boston, with the Providence way mail, at 8 o'clock, A. M., instead of 5 o'clock, to be delivered in Providence at 3 o'clock. This permission was granted on the 10th of August 1836, and continued in force until the 24th of said August, when it was revoked, and the plaintiffs were obliged to leave, and did leave Boston, with the way mail for Providence, at 5 o'clock, A. M. during the residue of the time embraced in the contract : So that during the whole time, except the above 14 days, the plain tiffs left Boston with that mail at 5 o'clock, A. M.

The defendants have paid the plaintiffs in full, for carrying the mail under said contract, provided they are entitled to receive only the smaller sum of $ 1000, mentioned in the contract.

It is contended by the defendants, that this is one entire contract, and cannot be apportioned ; and as, during a part of its existence, the mails did not leave Boston until 8 o'clock, A. M. — and that by consent of the plaintiffs — the right to receive a larger sum than $ 1000 was waived by them ; and that although the government revoked the aforesaid permission, at the end of 14 days, yet as the contingency had happened, that the delivering of the way mail at Providence was changed from 12 o'clock to 3, the defendants were wholly released from their obligation to pay the plaintiffs a larger sum than $ 1000.

No cases have been cited on either side, which bear directly on the case at bar. But the defendants apply general reasoning, in relation to the construction of entire contracts, to the present case. It is indeed held, that an entire contract cannot be apportioned. So when an entire sum is to be paid for an entire work, the entire performance of the work is, in general, a condition precedent, and must be proved before the defendant can be called on for payment. *Cutter* v. *Powell*, 6 T. R. 326. *Countess of Plymouth* v. *Throgmorton*, 1 Salk. 65. *Hulle* v. *Heightman*, 2 East, 145. *Stark* v. *Parker*, 2 Pick. 267 ; and numerous other cases.

But in looking into the contract between these parties, though the case which actually occurred does not seem to have been anticipated by them, yet we think sufficient appears from the instrument, to show that the parties did not contemplate an en-.ire contract. The language of the instrument is — "and the said V'nal " & others, " in consideration of one dollar paid, and also of the covenants above written, do covenant and agree to pay $ 1250 for the services of the said Brown " & others ; "provided, however, if the time for the delivery of the way mail at Providence shall be changed to 3 o'clock, P. M., *then in that case*, the said Vinal " & others " are to pay the sum of $ 1000, and no more, for the services above stated." At the close of the instrument, there is this clause : " And it is also understood and agreed, that the above sum of $ 1000, or $ 1250, whichever may become due by this indenture, shall be paid in *equal quarterly* payments." We think the true construction of this is, that during the time the mail shall be delivered at 10 o'clock at Providence, the payment shall be, from time to time, at the rate of $ 1250 for the whole time ; and that if, at any time during the existence of the contract, a change shall be made, during the time of such change, when the mail shall be delivered at 3 o'clock, the compensation shall be at the rate of $ 1000 for the whole time. In giving this meaning to the con-tract, we do not force its language. On the other hand, without violating any of the established rules for the construction of in-struments, we give effect to the contract in its spirit, and con-form to the intention of the parties, so far as that intention can be gathered from an imperfect expression of it.

According to the stipulation of the parties, the defendants are to be defaulted, and judgment entered pursuant to their agree-ment.